IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATHEW STEVEN TOWNSEND,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:10-cr-287 CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Defendant Mathew Steven Townsend ("Townsend") moves to dismiss with prejudice the federal indictment for robbery, arguing that beginning April 2, 2010 he was "shuttled" from state custody to federal custody, and then back to state custody on three separate occasions in violation of the Interstate Agreement on Detainers ("IAD"). The Government contends that after his initial hearing on April 2, 2010, Defendant was consistently held in federal custody and that no violation occurred. For the reasons expressed below, the Court finds that Defendant was in federal custody during the time in question, and that the IAD was not violated. Accordingly, Defendant's motion is denied.

## FACTUAL BACKGROUND

On March 29, 2010, Mr. Townsend allegedly robbed Beehive Credit Union.[1] He was arrested the following day and booked into Salt Lake County Adult Detention Center ("ADC")

---

[1] (Compl. ¶¶ 2-5), (Pl.'s Mem. In Opp'n to Def.'s Mot. To Dismiss, 2).

on numerous outstanding state warrants, including state bank robbery probable cause, and on a federal detainer for the same robbery.[2] On April 1, 2010, Mr. Townsend appeared before the West Jordan Justice Court via video from jail, where he was convicted by the state court for the previous charges of Retail Theft and Willfully Failing to Appear, and sentenced to 90 days.[3]

On April 2, 2010, the defendant was brought to federal court for an Initial Appearance before Magistrate Judge Alba, and then returned to the ADC.[4] On April 6, 2010, Defendant was brought before Magistrate Judge Nuffer for a Detention Hearing, after which he was presumably returned to the ADC.[5] Likewise, on April 12, 2010, Defendant was brought before Magistrate Judge Warner for Arraignment, and once again returned to the ADC where he has since been detained.[6]

Because no federal detention facility is located in this federal district, the state has contracted the use of the ADC to the federal government. Both parties agree that Mr. Townsend was physically detained at the ADC – a state facility – but diverge on whether he was in the custody of state or federal officials. Mr. Townsend argues that the ADC state detainee roster listing him as a state detainee is proof-positive that he was in state custody. The Government concedes that the listing was made, but argues that it was only an administrative mistake that does not change Mr. Townsend's status as a federal detainee, evidenced by the fact that the United States Marshall Service ("USMS") is financially responsible for his detention.

---

[2] (Compl. ¶¶ 2-5), (Pl.'s Mem. In Opp'n to Def.'s Mot. To Dismiss, 2).

[3] (Def.'s Mem. In Supp. Of Mot. To Dismiss, 1), (Pl.'s Mem. In Opp'n to Def.'s Mot. To Dismiss, Doc. 21-1).

[4] (Def.'s Mem. In Supp. Of Mot. To Dismiss, 1-2), (Pl.'s Mem. In Opp'n to Def.'s Mot. To Dismiss, 2).

[5] (Def.'s Mem. In Supp. Of Mot. To Dismiss, 2), (Pl.'s Mem. In Opp'n to Def.'s Mot. To Dismiss, 3).

[6] (Def.'s Mem. In Supp. Of Mot. To Dismiss, 2), (Pl.'s Mem. In Opp'n to Def.'s Mot. To Dismiss, 3).

## ANALYSIS

### I. THE INTERSTATE DETAINERS AGREEMENT

At the center of the IAD is a prohibition on "shuttling" prisoners back and forth between various jurisdictions. The purpose of this prohibition is to mitigate the "uncertainties which obstruct programs of prisoner treatment and rehabilitation," and "encourage the expeditious and orderly disposition of . . . charges and determination of the proper status" when such charges emanate from another jurisdiction.[7] The IAD does this by ensuring that once the prisoner is sent to the receiving state, "[i]f trial is not had on any indictment, information, or complaint . . . prior to the prisoner's being returned to the original place of imprisonment . . ., such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."[8] When the United States is the receiving state, however, Section 9 provides that dismissal may be with or without prejudice.[9]

### II. EVIDENCE OF STATE CUSTODY

Mr. Townsend's position rests on the allegation that he was shuttled from state to federal custody, and then back to state custody on April 2, April 6, and April 12, 2010. Mr. Townsend noted that the Government conceded that Mr. Townsend had been listed on the state jail roster, and relatedly, asserts that he had not been booked into the ADC on federal detainer.

Additionally, Mr. Townsend made several proffers during the hearing to support his motion. First, Mr. Townsend indicated that it was his understanding that the FBI was the cause of the mix-up. Second, Mr. Townsend attests to being billed by the state for his detention costs.

---

[7] 18 U.S.C. Appex § 2, art. I.
[8] 18 U.S.C. Appex § 2, art. IV(e).
[9] 18 U.S.C. Appex § 9.

Third, Mr. Townsend represents that the USMS was simply "willing" to pay the state for detention costs. Finally, Mr. Townsend claims that the billing to the USMS was retro-actively procured.

The Government's concession that the ADC roster had listed Mr. Townsend as a state detainee is germane. But, that is the only assertion for which Mr. Townsend offered evidence in support of his motion. While it is true that the other assertions are related to the question of custody, Defendant submitted no testimony, no transcript, nor any other evidence to the court. Proffered assertions cannot be weighed or considered by the court unless properly admitted.[10]

### III. EVIDENCE OF FEDERAL CUSTODY

The Government argues that Mr. Townsend's position is fundamentally incorrect because from April 2 to the date of the hearing, Defendant remained in the custody of the USMS and not in the custody of the state. The Government advances three arguments to support this claim: (1) The state roster and listing information indicates Defendant's status as a federal detainee, (2) Payment of detention was paid for by the USMS, and (3) The record evidences that Mr. Townsend was ordered into federal custody after each of the hearings before the Magistrate Judges.

#### A. Roster and Listing Information

The Government concedes that Mr. Townsend "was incorrectly listed on the jail's state detainee roster rather than the jail's federal detainee roster. . . ," but argues that Defendant was indeed a federal detainee because "[t]he basis for holding the defendant is listed as 'DT' which is the ADC's code describing a detainer . . . . Also, the description is listed as 'hold for (specify

---

[10] Mr. Townsend's assertions fail as hearsay under FRE 802, and for violating the Best Evidence Rule, FRE 1002. Mr. Townsend should have provided an affidavit or brought to court as witnesses those able to substantiate his claims, and brought with him any relevant documents to be offered into the record.

jurisdiction or judge)' which is the code used for federal detainees."[11] The Government argues that "[t]his clerical error of putting the defendant on the wrong list does not change the fact that he was in federal custody."[12] Defendant has provided no challenge to the Government's representation of the information provided in the listing. The court finds that the listing information supports the conclusion that Mr. Townsend was intended to be held in federal custody.

### B. Payment of Detention by the United States Martial Service

The IAD states:

> "From the time that a party State receives custody of a prisoner pursuant to this agreement until such prisoner is returned to the territory and custody of the sending State, the State in which the one or more untried indictments, information, or complaints are pending or in which trial is being had *shall be responsible for the prisoner and shall also pay all costs* of transporting, caring for, keeping, and returning the prisoner."[13]

In interpreting this provision, two federal courts have found that the source of payment for costs associated with detention is indicative of which sovereign is holding a defendant in custody. The District for Colorado has construed this provision to mean that "[i]f the 'receiving State,' the United States, paid all costs of caring for and keeping Defendant after he was returned to the [state jail], it follows that Mr. Townsend was in *federal* custody, not state custody."[14] Similarly, the U.S. District Court for Massachusetts has found that "[t]he sovereign paying for a prisoner's care is an important factor in determining who has custody of him."[15]

---

[11] (Pl.'s Mem. In Opp'n to Def.'s Mot. To Dismiss, 3) (citations omitted).

[12] Id.

[13] 18 U.S.C. Appex § 2, Art. V(h) (emphasis added).

[14] United States v. Small, 209 F.Supp.2d 1114, 1121-22 (D.Colo. 2002).

[15] United States v. Kelley, 300 F.Supp.2d 224, 228-29 (D.Mass. 2003).

The Government submitted "invoices" or financial summaries of federal inmates being physically held by the Salt Lake County Sheriff's Office. The May 2010 invoice notes that Mr. Townsend was to be held at the ADC from April 2, 2010 to July 1, 2010, costing the USMS $6,579.[16] Although it may not be a per se rule that the paying party has custody of a detainee, the court is persuaded by the federal cases' holding that payment is highly indicative of custody and a useful consideration for when confusion arises.

    C. <u>Orders and Transcripts from Federal Proceedings</u>

Although the listing and payment are persuasive, the most important evidence that Mr. Townsend was in federal custody are the transcripts of the proceedings that specifically remand Mr. Townsend to federal custody. In all three instances where Mr. Townsend alleges that he was remanded back to state custody, the record is clear that he was, in fact, remanded into the custody of the USMS.

At the April 2, 2010 Initial Appearance hearing, Judge Alba stated, "For now the defendant's ordered detained in the custody of the United States Marshal."[17] During the April 6, 2010 hearing before Judge Nuffer, Judge Nuffer clarified that Defendant "[had] been in our custody and [would] remain in our custody, unless he elects otherwise."[18] Of particular note is that Mr. Townsend's counsel Ms. Zenger replied, "He'll remain in federal custody."[19] As such, it appears that Defendant's counsel conceded that Mr. Townsend was in federal custody and wished to remain in federal custody. The docket likewise notes that "Defendant ordered

---

[16] (Pl.'s Mem. in Opp'n, Doc. 21-4, 2)

[17] Transcript of Initial Appearance Hearing Before Judge Alba, <u>United States v. Townsend</u>, 6, 2:10-CR-287(CW).

[18] Transcript of Detention Hearing Before Judge Nuffer, <u>United States v. Townsend</u>, 5-6, 2:10-CR-287(CW).

[19] <u>Id.</u> at 6.

detained pending trial and remanded to custody of USMS," and "Defendant elects to remain in federal custody." Lastly, although no transcript from the April 12, 2010 proceeding before Judge Warner was provided, the docket notes: "Dft is remanded to the USMS."[20]

## CONCLUSION

Although the Defendant was listed on a state detainee roster, the court finds that the notation was an administrative mistake. Moreover, the USMS's responsibility to pay for Mr. Townsend's detention at the ADC is indicative of federal custody. Finally, it is clear from the record that the Magistrate Judges intended, and the USMS accepted, Defendant into federal custody. For these reasons, there was no violation of the Interstate Agreement on Detainers and Mr. Townsend's motion to dismiss is DENIED.

DATED this 30th day of August, 2010.

BY THE COURT:

_____

Clark Waddoups

United States District Judge

---

[20] United States v. Townsend, Minute Entry (April 12, 2010), Dkt. No.12.